**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CHRISTOPHER MICHAEL JOHNSON**                                **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 4:19-CV-P174-JHM**

**GIBSON** *et al.*                                                              **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

      This matter is before the Court upon a motion by *pro se* Plaintiff Christopher Michael Johnson for summary judgment (DN 25) and cross-motions for summary judgment by Defendant Neil Troost, M.D. (DN 27) and Defendant Chief Deputy Gibson (DN 31). For the following reasons, the Court will deny Plaintiff's motion for summary judgment and grant Defendants' motions for summary judgment.

**I. PROCEDURAL HISTORY**

      This is a 42 U.S.C. § 1983 prisoner civil-rights action. On initial review of the complaint pursuant to 28 U.S.C. § 1915A, the Court allowed claims for deliberate indifference to Plaintiff's serious medical need to proceed against Chief Deputy Gibson and Dr. Troost in both their official and individual capacities for allegedly denying Plaintiff the pain medication that had been prescribed for his neuropathy by a previous physician.

**II. LEGAL STANDARD**

      Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts

demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence of the non-moving party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Nevertheless, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. It is against this standard that the Court reviews the facts presented.

### III. UNDISPUTED FACTS

According to the medical records provided by Plaintiff, Plaintiff was diagnosed with a gunshot-induced fracture of his left heel in 2017. Plaintiff was treated for this injury by various surgeons and nurse practitioners at an orthopedic surgery clinic. Plaintiff visited the clinic for a follow-up visit on July 13, 2018, and was seen by an orthopedic surgeon. (DN 25-1, p. 23). Due to Plaintiff's continued complaints of pain, the orthopedic surgeon recommended that Plaintiff be prescribed Ibuprofen 800 milligrams (three times a day) as well as a "prescription for

Gabapentin[1] 300 mg t.i.d. and titrate up as needed to control the patient's nerve related pain." (*Id.*). Plaintiff was also advised to return in three months for a follow-up x-ray. (*Id.*). Plaintiff was seen by a physician at the same practice on November 7, 2018. (DN 29, p. 10). This physician noted that Plaintiff appeared to have sensory nerve damage and was currently taking Gabapentin and recommended physical therapy before any further surgery was considered. (*Id.*). The last medical record submitted by Plaintiff from this clinic is from December 7, 2018. On this date, Plaintiff returned to the clinic for continued left heel pain. Plaintiff was seen by a nurse practitioner who noted that the jail where Plaintiff was incarcerated could increase Plaintiff's "Gabapentin up to 1200 mg 3 times daily as needed."[2] (DN 29, p. 12). The nurse practitioner also recommended that Plaintiff continue taking Naproxen 500 milligrams (twice daily) in conjunction with his numbing creams. (*Id.*).

Plaintiff was transferred to Henderson County Detention Center (HCDC) from the Clark County (Indiana) Jail (CCJ) on October 1, 2019. HCDC contracts with Southern Health Partners (SHP) to provide medical care to inmates. (DN 31-6, Gibson Aff.). The contract between SHP and HCDC establishes that SHP, and not HCDC, is responsible for inmates' medical care. (*Id.*; DN 31-6, Health Servs. Agreement).

On October 2, 2019, the day after Plaintiff's arrival at HCDC, a SHP official conducted a medical admissions screening. (DN 27-3, SHP Admission Data Form). During that screening, Plaintiff stated that he had been shot in various places in 2017 and that he had subsequently been diagnosed with neuropathy, nerve damage to his left foot, and post-traumatic stress syndrome. (*Id.*). Plaintiff further stated that he was currently taking Gabapentin 1200 milligrams (three

---

[1] According to WebMD, Gabapentin is used to relieve nerve pain and belongs to a class of drugs known as antiseizure drugs. WebMD, "Gabapentin Tablet," https://www.webmd.com/drugs/2/drug-14208-1430/gabapentin-oral/gabapentin-sustained-release-oral/details (visited March 8, 2021).
[2] The record does not clearly indicate which jail Plaintiff was incarcerated in at this time.

3

times daily), Wellbutrin 150 mg (twice daily), Buspar 15 milligrams (twice daily), and a "hyperintensive med." (*Id*.). After the screening, a SHP nurse contacted a nurse at CCJ where Plaintiff was incarcerated from September 14, 2019, to October 1, 2019, after being transferred there from another correctional facility. (DN 27-4, Progress Notes). CCJ sent SHP Plaintiff's medication history from CCJ which showed that Plaintiff had been prescribed Amlodipine 10 milligrams daily, Hydrochlorothiazide 25 milligrams daily, and Lisinopril 20 milligrams daily. Upon receiving this information, Defendant Troost prescribed Plaintiff these three medications and ordered that Plaintiff receive daily blood pressure checks for one week. (DN 27-5, SHP Physician's Order Sheet).

On October 4, 2019, Plaintiff filed a grievance complaining that he had not been prescribed the medications he reported taking. (DN 31-7, Grievance Form). Plaintiff was informed that he had been started on the medications he had been taking while at CCJ and that, although he would not be prescribed Gabapentin, he would be seen by Defendant Troost to see if he recommended a replacement drug. (*Id.*). On October 5, 2019, Defendant Troost prescribed Plaintiff Tegretol[3] to treat Plaintiff's complaints of neurologic-based pain, increased the dosage of Plaintiff's blood pressure medication, and prescribed Buspar 15 milligrams (twice daily) for anxiety. (DN 27-5, SHP Physician's Order Sheet). Defendant Troost adjusted Plaintiff's medications again on October 15, 2019, increasing the dosage of one blood pressure medication and adding a second, as well as doubling the dosage of Tegretol based upon Plaintiff's continued complaints of pain. (*Id.*). Plaintiff's medical records show that he refused Tegretol on eight

---

[3] According to WebMD, Tegretol (also known as carbamazepine) is used to prevent and control seizures and to control certain types of nerve pain. WebMD, "Tegretol XR," https://www.webmd.com/drugs/2/drug-13503/Tegretol-xr-oral/details (visited March 8, 2021).

days between October 18, 2019, and November 12, 2019, stating that the medication did not work. (DN 29, pp. 15-22, Refusal of Medical Treatment Forms).

On November 15, 2019, Plaintiff filed another grievance based upon his failure to be prescribed Gabapentin. (DN 31-9, Grievance Form). Therein he stated, "I need my 1200 mg 3 times a day of Gabapentin to help with my nerve pain. the medicine you are giving me do not work . . . ." (*Id.*). In response, a SHP official stated that Plaintiff had been informed that he would not be prescribed Gabapentin and that he must at least try the medication prescribed by Defendant Troost before an alternative medication would be prescribed. Plaintiff filed another grievance regarding this issue on November 17, 2019. (DN 31-9, Grievance Form). The response to this grievance stated that HCDC does not prescribe Gabapentin and noted that Plaintiff had been informed that he must try the medication prescribed by Defendant Troost for an extended period of time (two-four weeks), and that if the medication was still not effective after that time period, he would be re-evaluated by Defendant Troost. (*Id.*).

On November 18, 2019, Plaintiff was assessed by a nurse. (DN 27-9, SHP Assessment Form). Plaintiff informed her that he had bullets in his right foot, left heel, and right buttock which caused him to suffer from neuropathy. (*Id.*). He also complained of anxiety and requested that his dosage of Buspar be increased. (*Id.*). He further stated that he had previously been prescribed Seroquel and asked that he be prescribed that medication again. (*Id.*). Plaintiff also informed the nurse that he would not take Tegretol. (*Id.*).

On November 27, 2019, Plaintiff filed a grievance directed to Defendant Gibson in which he asked "what is the reason you want allow me to have [Gabapentin] in this jail?" (DN 25-1, Grievance). An HCDC official responded to the grievance stating, "Colonel Gibson has advised SHP to answer your complaints on your medications." (*Id.*).

Plaintiff filed another grievance on December 5, 2019, requesting to be prescribed Gabapentin and stating that the medication that Dr. Troost had prescribed makes him feel nauseated and "doesn't help with my nerve damage nor my chronic pain." (DN 25-1, Grievance). On December 12, 2019, Defendant Troost discontinued Plaintiff's Tegretol and prescribed him Dilantin 100 milligrams (three times daily) for his pain as well as Seroquel for his mental health needs. (DN 27-8, SHP Physician Order Sheet).

Shortly thereafter, Plaintiff was transferred to another facility. Plaintiff was incarcerated at HCDC for a total of 80 days.

## IV. ANALYSIS

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Individual-Capacity Claims

In their motions for summary judgment, the parties debate whether Plaintiff was incarcerated as a pretrial detainee or a convicted prisoner at HCDC. However, the Court need not decide this issue because, as explained below, the Sixth Circuit continues to apply the same standard to medical care claims brought by both pretrial detainees and convicted prisoners.

"The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs,

but where that claim is asserted on behalf of a pretrial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Phillips v. Roane Cty.*, 534 F.3d 531, 539 (6th Cir. 2008)); *see Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) ("The Eighth Amendment protection against deliberate indifference extends to pretrial detainees in state prisons by operation of the Due Process Clause of the Fourteenth Amendment."). The Eighth Amendment standard consists of a two-part framework with both an objective component - a "'sufficiently serious' medical need" - and a subjective component – a "sufficiently culpable state of mind." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that the subjective intent requirement of Eighth Amendment claims does not apply to excessive force claims brought by pretrial detainees under the Fourteenth Amendment. The Sixth Circuit was asked to decide what impact the Supreme Court's holding in *Kingsley* had on medical claims brought by pretrial detainees under the Fourteenth Amendment in *Griffith v. Franklin Cty.*, 975 F.3d 554 (6th Cir. 2020). The *Griffith* court began its analysis by reiterating that the Sixth Circuit has consistently applied the same "deliberate indifference" framework to Eighth-Amendment claims brought by prisoners as well as to Fourteenth-Amendment claims brought by pretrial detainees. *Id*. at 569 (citing *Roberts v. City of Troy*, 773 F.2d 720, 724-25 (6th Cir. 1985); *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) ("This Court has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'") (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). The *Griffith* court then acknowledged that, following *Kingsley*, circuit

7

courts have divided on whether an objective test should govern conditions-of-confinement claims brought under the Fourteenth Amendment. *Id*. at 570. However, the *Griffith* court decided to "stay out of the fray" and declined to decide what applicability *Kingsley* has on medical care claims brought by pretrial detainees in the Sixth Circuit. *Id*. (en banc rehearing denied, *Griffith v. Franklin Cty.*, 2021 U.S. App. LEXIS 1284 (6th Cir. Jan. 15, 2021)). Thus, for now, the applicable test continues to require both a convicted prisoner and a pretrial detainee to establish the objective *and* subjective components of a deliberate indifference claim. *See, e.g.*, *Charles v. Lee Cty., Ky.*, No. CV 5:19-479-DCR, 2020 U.S. Dist. LEXIS 204056 (E.D. Ky. Nov. 2, 2020) (summarizing the holding in *Griffith*).

### 1. Objective Component

"The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the [Constitution]." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citing *Farmer*, 511 U.S. at 834). A sufficiently serious medical need "is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore*, 390 F.3d at 897).

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff's diagnoses of neuropathy and/or nerve damage in his left foot constitutes an objectively serious medical condition.

### 2. Subjective Component

To satisfy the subjective component under the Eighth Amendment, "the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Winkler*, 893 F.3d at 891 (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir.

8

2009)). Under this standard, "the plaintiff must show that each defendant acted with a mental state 'equivalent to criminal recklessness.'" *Rhinehart*, 894 F.3d at 738 (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)). "This showing requires proof that each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Id*. (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)); *see also Richmond*, 885 F.3d at 939.

To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842). But "[a] doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference." *Id*. Accordingly, "[w]here the plaintiff has received some medical treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); *see Rhinehart*, 894 F.3d at 738 ("[W]hen a claimant challenges the adequacy of an inmate's treatment, 'this Court is deferential to the judgments of medical professionals.'" (quoting *Richmond*, 885 F.3d at 940). A plaintiff can nevertheless satisfy this standard by demonstrating that a medical professional "consciously expos[ed] the patient to an excessive risk of serious harm" in administering treatment, *Richmond*, 885 F.3d at 940 (quoting *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001)), or rendered medical care "so woefully inadequate as to amount to no treatment at all." *Id*. (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

### a. Defendant Troost

In his motion for summary judgment, Defendant Troost argues that Plaintiff has failed to produce evidence showing that Defendant Troost "consciously disregarded" a substantial risk of harm to Plaintiff. The Court agrees. The record shows that Defendant Troost prescribed medication (Tegretol) for Plaintiff's neuropathy during the relatively short period he was incarcerated at HCDC. Moreover, although Plaintiff claims that this medication did not work, the record shows that Plaintiff failed to take it as prescribed. The record also shows that when Plaintiff continued to complain that the medication was not working, Defendant Troost first increased Plaintiff's dosage of this medication and then prescribed Plaintiff a different medication (Dilantin) for his pain. Moreover, although Plaintiff repeatedly asserts that Tegretol is not used to treat neuropathy, he fails to present any medical evidence in support of this argument.

Because the undisputed evidence shows that Defendant Troost provided treatment for Plaintiff's neuropathy and adjusted that treatment when Plaintiff continued to complain of pain, Plaintiff's argument that Defendant Troost violated his constitutional rights because he failed to prescribe Plaintiff the medication (Gabapentin) that had been prescribed by another physician is without merit. The evidence simply does not establish that the medical care rendered by Defendant Troost for Plaintiff's neuropathy was "so woefully inadequate as to amount to no treatment at all." *Richmond*, 885 F.3d at 940; s*ee also Thomas v. Coble*, 55 F. App'x 748 (6th Cir. 2003) (affirming grant of summary judgment to defendants where the plaintiff disagreed with the defendant doctor over the preferred medication to treat the plaintiff's pain but the evidence showed that the doctor had responded to the plaintiff's complaints of pain and prescribed him pain relievers); *Koos v. Corr. Corp. of Am.*, 63 F. App'x 796, 797 (6th Cir.

2003) (explaining that a plaintiff's "dissatisfaction with his treatment does not state a claim under the Eighth Amendment"); *Jones v. Pancake*, No. 3:06CVP188-H, 2009 U.S. Dist. LEXIS 14582, at *11 (W.D. Ky. Feb. 25, 2009) ("While Plaintiff might have desired the pain medication to be continued for a longer period or might have deemed more extensive tests necessary, this is not a case where all treatment was withheld from Plaintiff.  Although not as extensive as he would have liked, Plaintiff did receive treatment . . . [and] has not established a deliberate indifference claim against Dr. Hiland.").

Thus, the Court concludes that Defendant Troost is entitled to judgment as a matter of law on the individual-capacity claim brought against him.

### b. Defendant Gibson

In her motion for summary judgment, Defendant Gibson argues that she is entitled to summary judgment on Plaintiff's individual-capacity claim because she was not responsible for Plaintiff's medical care.  In response, Plaintiff argues that Defendant Gibson is liable because she was responsible for his medical care as the deputy jailer at HCDC.  Plaintiff's argument fails for two reasons.  First, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Second, Plaintiff has presented no evidence showing that Defendant Gibson was Defendant Troost's supervisor.  In fact, the evidence shows that SHP, and not HCDC or any HCDC official, was solely responsible for inmates' medical care.  *See* DN 31-6, Gibson Aff.; DN 31-13, Health Servs. Agreement.

Plaintiff also argues that Defendant Gibson acted with deliberate indifference to his serious medical need because she knew that Dr. Troost would not prescribe him Gabapentin for

his neuropathy but failed to have him transferred to another facility. In support of this argument, Plaintiff cites to an HCDC policy which states, "An inmate who has been prescribed treatment by a recognized medical authority and cannot receive that treatment in the jail shall be moved to another confinement facility which can provide the treatment or may be moved to a hospital." (DN 35-1, p. 18, HCDC Policy). However, even if the Court were to find that Defendant Gibson had violated this policy, "the failure to follow internal policies, without more, [does not] constitute deliberate indifference." *Griffith*, 975 F. 3d at 579 (quoting *Winkler*, 893 F.3d at 891). Moreover, it is not unconstitutional for municipalities and their employees to "rely on medical judgments made by medical professionals responsible for prisoner care." *Graham ex rel. Est. of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (internal quotation marks and citation omitted).

In light of the above, the Court concludes that a jury could not reasonably find that Defendant Gibson violated Plaintiff's constitutional rights. Therefore, Defendant Gibson is entitled to judgment as a matter of law on Plaintiff's individual-capacity claim against her.

### B. Official-Capacity Claims

Plaintiff's official-capacity claim against Defendant Troost is actually against his employer, SHP, and his official-capacity claim against Defendant Gibson is actually against her employer, Henderson County.

When a § 1983 claim is made against a municipality, such as Henderson County, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a

municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

There are four methods of proving a municipality's illegal policy or custom. The plaintiff may prove "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

The Sixth Circuit has held that, for purposes of liability under § 1983, this standard also applies to private entities, such as SHP, which have contracted with a municipality to provide medical services to inmates. *See, e.g.*, *Winkler*, 893 F.3d at 904 ("A private entity . . . that contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function.") (citing *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005)); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1996) (treating a private prison corporation as a person for purposes of § 1983).

Here, Plaintiff avers that HCDC and/or SHP had a policy of refusing to prescribe Gabapentin to inmates at HCDC.  However, the Sixth Circuit has held that neither a municipality, nor a contracted private entity such has SHP, can be liable unless the plaintiff establishes an underlying constitutional violation.  *Griffith*, 975 F. 3d at 581 (citing *Baker v. City of Trenton*, 936 F.3d 523, 535 (6th Cir. 2019) ("[W]here there has been no showing of individual constitutional violations . . . there can be no municipal liability."); *Winkler*, 893 F.3d at 899-902; *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

Because, as explained above, Plaintiff has failed to produce evidence upon which a jury could reasonably find that his constitutional rights were violated, Defendants are entitled to summary judgment as to Plaintiff's official-capacity claims against them.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant Troost's and Defendant Gibson's motions for summary judgment (DNs 27 & 31) are **GRANTED** and that Plaintiff's motion for summary judgment (DN 25) is **DENIED**.

Date: March 8, 2021

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
      Counsel of Record
4414.011